IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JEFF LOPEZ, on behalf of himself and all others similarly situated, | § § § § § § § § § § § | |
| Plaintiff-Intervenor, | | |
| v. | | Civil Action No. 3:08-cv-01975-O |
| SOUTHWEST AIRLINES CO., | | |
| Defendant. | | |

| | | |
|---|---|---|
| RICHARD CUSICK, DORRIS McDOWELL SAMSIL, JR., and MITCHELL HUNGERPILLER, individually and on behalf of a class of similarly situated persons, | § § § § § § § § § § § § | |
| Plaintiffs, | | Civil Action No. 3:09-cv-00137-O |
| v. | | |
| SOUTHWEST AIRLINES CO., | | |
| Defendant. | | |

## ORDER

Before the Court are Defendant Southwest Airlines Co.'s ("Southwest") Motion to Dismiss for Lack of Subject Matter Jurisdiction, Or Alternatively, Motion for Summary Judgment ("Motion to Dismiss") (ECF No. 170), Brief in Support of Southwest's Motion to Dismiss (ECF No. 171), Appendix in Support of Southwest's Motion to Dismiss (ECF No. 172), each filed November 30, 2012; Plaintiffs' Response to Southwest's Motion to Dismiss (ECF No. 187), filed December 21, 2012; and Southwest's Reply (ECF No. 192), filed January 9, 2013. The Honorable Royal Furgeson held a hearing on Southwest's Motion to Dismiss on April 3,

1

2013, and requested additional briefing from the parties. *See* Electronic Minute Entry, Apr. 3, 2013, ECF No. 197; Hr'g Tr., ECF No. 199. Plaintiffs filed their Surreply to Southwest's Motion to Dismiss on April 23, 2013 (ECF No. 202), and Southwest filed its Surresponse on May 13, 2013 (ECF No. 205). Southwest also filed a Supplemental Document on May 13, 2013 (ECF No. 206). The above-referenced cases were coordinated for pre-trial purposes on February 10, 2009, and since then the filings in both cases have been identical. The document numbers in this Order refer to those in *Lopez v. Southwest Airlines Co.*, No. 3:08-cv-01975-O. These cases have been reassigned to the undersigned. Having reviewed Southwest's Motion to Dismiss, the related briefing, and the applicable law, the Court finds that Southwest's Motion to Dismiss should be and is hereby **GRANTED**.[1] The claims of the original named Plaintiffs are **DISMISSED without prejudice** for lack of standing. Consequently, Intervenors' claims are **DISMISSED without prejudice**.

## I. SUMMARY

These cases have a long, complicated procedural history. There are two cases: *Lopez v. Southwest Airlines Co.*, No. 3:08-cv-01975-O, which was originally filed in the Western District of Texas, and *Cusick v. Southwest Airlines Co.*, No. 3:09-cv-00137-O, which was originally filed in the Northern District of Alabama. The cases were coordinated for pre-trial purposes under *Kleiner v. Southwest Airlines Co.*, No. 3:08-cv-01975-O, on February 10, 2009, and were later renamed *Lopez v. Southwest Airlines Co.* after Plaintiff Samuel Kleiner voluntarily dropped out. *See* Agreed Order Coordinate Pre-Trial Purposes, Feb. 10, 2009, ECF No. 28; Unopposed Mot. Voluntary Dismissal, ECF No. 47; Electronic Order Granting Unopposed Mot. Voluntary Dismissal, Sept. 21, 2009, ECF No. 48. Plaintiffs' Original Complaint, filed on March 17, 2008,

---

[1] This Order grants the following motions: Southwest's Motion to Dismiss, *Lopez v. Southwest Airlines Co.*, No. 3:08-cv-01975-O (N.D. Tex. Nov. 30, 2012), ECF No. 170; and Southwest's Motion to Dismiss, *Cusick v. Southwest Airlines Co.*, No. 3:09-cv-00137-O (N.D. Tex. Nov. 30, 2012), ECF No. 109.

2

alleged that Southwest had committed a broad number of violations of various "airworthiness directive" safety measures mandated by the federal government, thereby risking passenger safety. *See generally* Compl., ECF No. 1. These violations, which have been the subject of congressional hearings, led to the breach-of-express-warranty claims asserted in this litigation. Plaintiffs' Consolidated Amended Class Action Complaint alleges that the following language in paragraph 125 of Southwest's Contract of Carriage contains the express warranty that Southwest breached:

> All transportation is sold and all carriage is performed subject to compliance with all applicable laws and governmental regulations, including those of the U.S. Department of Transportation, the Federal Aviation Administration, and the Transportation Security Administration, many of which are not specified herein but are nonetheless binding on Carrier and all passengers.

Pls.' Consolidated Am. Class Action Compl. ¶ 157, ECF No. 156.

Plaintiffs presented several bases for these claims, including very broad claims that Southwest committed a breach of express warranty in allowing wide-scale, systematic violations of federal regulations in general. Although Plaintiffs retain these broad claims, they have winnowed down their claims for purposes of seeking class certification to only those arising out of the alleged violations of one particular airworthiness directive, the Chem-Mill Airworthiness Directive ("Chem-Mill AD"), which was one of the many claims included in the original complaint. *See generally* Pls.' Mot. Class Certification, ECF No. 166. Plaintiffs' Class Certification Motion limits the six subclasses to persons who flew on Southwest "aircraft [that were] in violation of Airworthiness Directive ("AD") 2004-18-06 (the "Chem Mill AD")." *See id.* at 1. Plaintiffs do not seek certification of a class of people who flew on Southwest aircraft that allegedly violated any other Airworthiness Directive or federal air-safety regulation. *See generally id.*

3

After several years of discovery, it was revealed that none of the original named Plaintiffs had flown on an aircraft that violated Chem-Mill AD. In fact, this point is undisputed. *See* App. Supp. Def.'s Mot. Dismiss Ex. 2 (Brown Decl.), at App. 59, ¶ 7, ECF No. 172; *id.* Ex. 2.A. (Chem-Mill AD Information Chart), at App. 60–63; *id.* Ex. 3 (Whelchel Decl.), at App. 64–69; *id.* Ex. 3.A.–D. (Passenger Records Spreadsheets), at App. 70–76. To pursue the Chem-Mill AD claims, Plaintiffs moved to add a group of intervenors in both cases on May 21, 2012. *See* Unopposed Mot. Intervene, *Lopez v. Southwest Airlines Co.*, No. 3:08-cv-01975-O (N.D. Tex. May 21, 2012), ECF No. 154; Unopposed Mot. Intervene, *Cusick v. Southwest Airlines Co.*, No. 3:09-cv-00137-O (N.D. Tex. May 21, 2012), ECF No. 93. The Court granted their unopposed motions to intervene. *See* Electronic Order Granting Mot. Intervene, *Lopez v. Southwest Airlines Co.*, No. 3:08-cv-01975-O (N.D. Tex. May 22, 2012), ECF No. 155; Electronic Order Granting Mot. Intervene, *Cusick v. Southwest Airlines Co.*, No. 3:09-cv-00137-O (N.D. Tex. May 22, 2012), ECF No. 94. At the time, Plaintiffs did not state the explicit purpose of the intervention, i.e., that Intervenors would be used for Chem-Mill AD claims and that those claims would be the *only* ones pursued in the Motion for Class Certification. *See generally* Unopposed Mot. Intervene, *Lopez v. Southwest Airlines Co.*, No. 3:08-cv-01975-O (N.D. Tex. May 21, 2012), ECF No. 154; Unopposed Mot. Intervene, *Cusick v. Southwest Airlines Co.*, No. 3:09-cv-00137-O (N.D. Tex. May 21, 2012), ECF No. 93. In the wake of the now undisputed fact that Intervenors *did* fly on Chem-Mill AD flights, the Court must analyze whether their intervention was proper.

In the Texas lawsuit, *Lopez v. Southwest Airlines Co.*, these issues present a serious and ultimately dispositive procedural defect. As the Court will explain below, none of the original Texas named Plaintiffs had standing to bring their claims, especially not the Chem-Mill AD

claim, because none of them flew on such a flight; therefore, they could not suffer an injury. This defect defeated the Court's jurisdiction from the outset. Since this Court never had jurisdiction over these claims, no tolling standards—whether cross-jurisdictional or otherwise—would apply, and the four-year Texas statute of limitations continued to run. Therefore, although Intervenor-Plaintiffs *did* fly on Chem-Mill AD flights, they intervened after the statute of limitations in Texas had expired. Furthermore, Intervenors' claims could not relate back to the original filing date because there was no case over which the Court had jurisdiction. Finally, Intervenors' Chem-Mill AD claims in *Lopez* cannot survive independently, because the statute of limitations has expired in Texas, extinguishing the ability to sue absent the ability to use relation back.

  Plaintiffs argue at length that Intevenors' Chem-Mill AD claims were tolled because Chem-Mill AD flights were included in the broad original complaint. Pls.' Resp. Mot. Dismiss 6–8, ECF No. 187. However, the Court finds this position untenable. Plaintiffs cannot plead broadly—without a plaintiff with standing to bring each separate claim—to toll *all* related claims, and then return *after* the statute of limitations has expired to cure any defects. The fact that the claims all concerned similar air-safety violations is not enough to overcome the glaring procedural problem. While the dismissal is on strictly technical grounds, the Constitution and precedent require such a result.

  The Alabama lawsuit, *Cusick v. Southwest Airlines Co.*, suffers from the same procedural defects as *Lopez* on the issues of standing and relation back. While the named Plaintiffs did not fly on any flights that allegedly violated airworthiness directives, Intervenors may have independent standing. Because there was no valid case to intervene, the intervention was not proper, and the Court will dismiss Intervenors' claims without prejudice, allowing them to re-file

subject to the respective statutes of limitations. The Court holds that the statutes of limitations on Intervenors' claims were tolled from the time of their attempted intervention until this dismissal. This is because Intervenors likely relied on these pending cases to address any injuries they suffered arising out of Southwest's alleged failures to comply with federal safety regulations. Lastly, Plaintiffs request that the Court make an *Erie* guess regarding Alabama's statute of limitations. The Court finds this unnecessary, since the claims are being dismissed due to lack of subject-matter jurisdiction and relation back. Nevertheless, the Court is willing to address those arguments in the alternative and finds that it is unlikely that Alabama recognizes a cause of action for breach of an express warranty for services unrelated to housing construction.

## II. DISCUSSION

### A. Original Plaintiffs in Both Cases Lack Standing

"[S]tanding is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). When a plaintiff cannot satisfy the standing requirements imposed by Article III, courts lack subject-matter jurisdiction over a case. *See Cadle Co. v. Neubauer*, 562 F.3d 369, 371 (5th Cir. 2009). To prove standing to bring a claim in federal court, "a litigant must demonstrate that it has suffered a concrete and particularized injury that is either actual or imminent, that the injury is fairly traceable to the defendant, and that it is likely that a favorable decision will redress that injury." *Massachusetts v. E.P.A.*, 549 U.S. 497, 517 (2007).

The Court is not persuaded that Plaintiffs suffered an injury due to the alleged "widespread systemic failure by Southwest" when they cannot show that they flew on an aircraft that was in any way defective. Pls.' Surreply Mot. Dismiss 3, ECF No. 202. The intervention of new plaintiffs who would have standing does not cure the problem. The Fifth Circuit has stated

unequivocally that "where a plaintiff never had standing to assert a claim against the defendants, it does not have standing to amend the complaint and control the litigation by substituting new plaintiffs, a new class, and a new cause of action." *Summit Office Park, Inc. v. U.S. Steel Corp.*, 639 F.2d 1278, 1282 (5th Cir. Unit A Mar. 1981). Additionally, Plaintiffs must satisfy subject-matter jurisdiction at all times. *Sommers Drug Stores Co. Emp. Profit Sharing Trust v. Corrigan*, 883 F.2d 345, 348 (5th Cir. 1989).

"A case is properly dismissed for lack of subject matter jurisdiction when the court lacks statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). An "essential component[]" of a federal court's subject-matter jurisdiction is the plaintiff's standing to invoke the court's adjudicatory power. *See Sample v. Morrison*, 406 F.3d 310, 312 (5th Cir. 2005) (per curiam). To establish standing, a plaintiff must demonstrate "an injury in fact—a harm suffered by the plaintiff that is concrete and actual or imminent, not conjectural or hypothetical." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103 (1998) (citation and internal quotation marks omitted). Failure to establish an injury in fact "deprives the federal courts of jurisdiction to hear the suit." *See, e.g.*, *Rivera v. Wyeth-Ayerst Labs.*, 283 F.3d 315, 319 (5th Cir. 2002). Furthermore, defects in subject-matter jurisdiction can be raised at any time during the proceedings or even *sua sponte* by the court. Fed. R. Civ. P. 12(h)(3). In ruling on a challenge to the court's subject-matter jurisdiction, the court may consider "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. May 1981).

7

Here, Plaintiffs made broad claims about flight safety violations but did not include as plaintiffs any individuals who flew on Chem-Mill AD flights or any other flight that was in violation of a federal safety regulation. Plaintiffs concede that none of the original named plaintiffs flew on Chem-Mill AD flights, and instead argue that Intervenors did. *See generally* Pls.' Resp. Mot. Dismiss, ECF No. 187. Plaintiffs contend that "[t]he mere fact that the Intervenors have sought to certify a smaller subset of the claims contained in the Complaint does not mean that the original Plaintiffs do not have standing; in fact, there is no reason any of the Plaintiffs would lose standing." *Id.* at 5. However, this argument misses the point. The potential certification of a subset of claims would, of course, not eliminate the standing of plaintiffs who would not fit into the class; it would merely preclude those plaintiffs from participating in the class action. The plaintiffs who would not fit into the class would still be able to assert any non-class claims they had. The problem here is that the original named Plaintiffs never had standing to bring *any* claims because they have not demonstrated that they were on an aircraft that violated the federal regulations and airworthiness directives that form the basis of their lawsuit. In short, for Plaintiffs to retain standing, they must have it from the outset. The fact that Intervenors would have had standing if they had been originally named as plaintiffs in this litigation is irrelevant.

At least one named plaintiff must suffer an "injury in fact" and "the 'injury in fact' test requires more than an injury to a cognizable interest. It requires that the party seeking review be himself among the injured." *Sierra Club v. Morton*, 405 U.S. 727, 734–35 (1972). Thus, "[a]n intervenor lacking an independent jurisdictional basis cannot maintain suit where the court lacked original subject matter jurisdiction." *Simmons v. Interstate Commerce Comm'n*, 716 F.2d 40, 46 (D.C. Cir. 1983). None of the original Plaintiffs can meet this requirement because none

Here, Plaintiffs made broad claims about flight safety violations but did not include as plaintiffs any individuals who flew on Chem-Mill AD flights or any other flight that was in violation of a federal safety regulation. Plaintiffs concede that none of the original named plaintiffs flew on Chem-Mill AD flights, and instead argue that Intervenors did. *See generally* Pls.' Resp. Mot. Dismiss, ECF No. 187. Plaintiffs contend that "[t]he mere fact that the Intervenors have sought to certify a smaller subset of the claims contained in the Complaint does not mean that the original Plaintiffs do not have standing; in fact, there is no reason any of the Plaintiffs would lose standing." *Id.* at 5. However, this argument misses the point. The potential certification of a subset of claims would, of course, not eliminate the standing of plaintiffs who would not fit into the class; it would merely preclude those plaintiffs from participating in the class action. The plaintiffs who would not fit into the class would still be able to assert any non-class claims they had. The problem here is that the original named Plaintiffs never had standing to bring *any* claims because they have not demonstrated that they were on an aircraft that violated the federal regulations and airworthiness directives that form the basis of their lawsuit. In short, for Plaintiffs to retain standing, they must have it from the outset. The fact that Intervenors would have had standing if they had been originally named as plaintiffs in this litigation is irrelevant.

At least one named plaintiff must suffer an "injury in fact" and "the 'injury in fact' test requires more than an injury to a cognizable interest. It requires that the party seeking review be himself among the injured." *Sierra Club v. Morton*, 405 U.S. 727, 734–35 (1972). Thus, "[a]n intervenor lacking an independent jurisdictional basis cannot maintain suit where the court lacked original subject matter jurisdiction." *Simmons v. Interstate Commerce Comm'n*, 716 F.2d 40, 46 (D.C. Cir. 1983). None of the original Plaintiffs can meet this requirement because none

can satisfy the three basic requirements of standing: (1) there must be an injury in fact; (2) there must be a causal connection between the injury and the conduct complained of; and (3) it must be likely, as opposed to speculative, that the injury will be redressed by a favorable decision. *See Nat'l Rifle Ass'n of Am., Inc. v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*, 700 F.3d 185 (5th Cir. 2012) (citing *Lujan*, 504 U.S. at 560). The original Plaintiffs suffered no injury in fact because none of them flew on a flight that was defective under federal regulations.

Plaintiffs argue that "all the original Plaintiffs had standing at the time the Original Complaint was filed because the Original Complaint alleged broad-based violations of federal regulations." Pls.' Resp. Mot. Dismiss 3, ECF No. 187. At the pleading stage, there is a presumption of standing, but that presumption has been rebutted because after years of discovery Plaintiffs have failed to produce evidence indicating that they were on a defective flight. *See Lujan*, 504 U.S. at 560–61 ("At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss [the court] 'presume[s] general allegations embrace those specific facts that are necessary to support the claim.'" (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889 (1990))). This is no longer the pleading stage and Plaintiffs are no longer entitled to this presumption. Southwest has made a factual attack on Plaintiffs' standing, which they were obligated to defend. It is Plaintiffs' burden to prove that they have standing as part of their burden of establishing by a preponderance of the evidence that this Court has jurisdiction. *See, e.g.*, *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980). Plaintiffs cannot now reverse engineer a legitimate claim by inserting Intervenors, because the Court never had proper subject-matter jurisdiction over even the broadest of these claims. In other words, this defect cannot be cured retroactively since the statute of limitations has now expired.

In the absence of original plaintiffs with standing, the legal effect of the intervention is itself called into question. When the Court approved the intervention, it was procedural; it was not a validation of the jurisdiction of the original claimants. It is well established that intervention presupposes the pendency of an action in a court of competent jurisdiction. *See Kendrick v. Kendrick*, 16 F.2d 744, 745 (5th Cir. 1926) ("An existing suit within the court's jurisdiction is a prerequisite of an intervention, which is an ancillary proceeding in an already instituted suit or action . . . ."). Furthermore, "[i]ntervention cannot cure any jurisdictional defect that would have barred the federal court from hearing the original action. Intervention presupposes the pendency of an action in a court of competent jurisdiction and cannot create jurisdiction if none existed before." 7C Charles Alan Wright et al., Federal Practice and Procedure § 1917 (3d ed. 2013) (footnotes omitted).

In the wake of Plaintiffs now narrowing their focus only to the Chem-Mill AD claims, it is clear that the Court never had proper subject-matter jurisdiction because the original named Plaintiffs never flew on a Chem-Mill AD flight nor *any* flight alleged to have violated one of the named Airworthiness Directives. The Court concludes that the original named Plaintiffs in both the *Lopez* and *Cusick* litigations have failed to show that they suffered an injury in fact. Accordingly, because there was never a proper case or controversy before this Court related to an express warranty claim arising out of an alleged violation of the Chem-Mill AD or any other federal regulation, this Court's subject-matter jurisdiction was never properly invoked. *See, e.g.*, *O'Shea v. Littleton*, 414 U.S. 488, 493–94 (1974). Plaintiffs never had standing, individually or on behalf of the purported class, to assert claims for breach of an express warranty relating to an alleged Chem-Mill AD violation. *See, e.g.*, *Bailey v. Patterson*, 369 U.S. 31, 32–33 (1962)

(because appellants lacked standing, they could not represent a class of whom they were not a part). As a result, the Court must dismiss the original Plaintiffs' claims without prejudice.

This defect has fatal consequences for the standing of Intervenors as well. The statute of limitations expired on Intervenors' claims on March 23, 2011—four years from the last allegedly non-compliant flight—or at the very latest on April 11, 2012—four years from the filing of the last of the two instant lawsuits, and more than four years from the congressional hearings that occurred on April 3, 2008. This was either one year and two months, or a month and a half, before Intervenors intervened on May 21, 2012. *See* Unopposed Mot. Intervene, *Lopez v. Southwest Airlines Co.*, No. 3:08-cv-01975-O (N.D. Tex. May 21, 2012), ECF No. 154; Electronic Order Granting Mot. Intervene, *Lopez v. Southwest Airlines Co.*, No. 3:08-cv-01975-O (N.D. Tex. May 22, 2012), ECF No. 155; Unopposed Mot. Intervene, *Cusick v. Southwest Airlines Co.*, No. 3:09-cv-00137-O (N.D. Tex. May 21, 2012), ECF No. 93; Electronic Order Granting Mot. Intervene, *Cusick v. Southwest Airlines Co.*, No. 3:09-cv-00137-O (N.D. Tex. May 22, 2012), ECF No. 94.

While the record shows that Intervenors *did* fly on Chem-Mill AD flights, the Court cannot allow intervention when the original named Plaintiffs lacked standing. *See Pianta v. H.M. Reich Co.*, 77 F.2d 888, 890 (2d Cir. 1935) ("The right to intervene presupposes an action duly brought, and if jurisdiction is lacking at the commencement of the suit, it cannot be aided by the intervention of a creditor with a sufficient claim."); *Walters v. Edgar*, 163 F.3d 430, 432–33 (7th Cir. 1998) ("[T]hese plaintiffs never had standing to bring this suit, and so federal jurisdiction never attached. . . . [I]f the named plaintiffs lacked standing when they filed the suit, there were no other party plaintiffs to step into the breach created by the named plaintiffs' lack of standing . . . ."). Because the pre-existing suit requirement for intervention was never satisfied,

there is no basis for intervention. *See, e.g.*, *Mattice v. Meyer*, 353 F.2d 316, 319 (8th Cir. 1965) (Plaintiff "lacked standing at law to maintain the proceeding as a formal action; absent the pendency of an action, there was no basis for intervention under Rule 24 [of the Federal Rules of Civil Procedure].").

Even if any of the original named Plaintiffs had standing to bring claims against Southwest for violations of Airworthiness Directives *other than* the Chem-Mill AD claims, it is doubtful that this Court could allow the intervention to boot strap Chem-Mill AD claims that were both time-barred and over which the Court did not initially have jurisdiction. Plaintiffs have argued that the "broad claims" in the original complaint would justify relation back for Intervenors' Chem-Mill AD claims. Pls.' Resp. Mot. Dismiss 8–9, ECF No. 187. This argument is necessary for Plaintiffs to propose the class certification, which only focuses on the Chem-Mill AD flights. *See generally* Pls.' Mot. Class Certification, ECF No. 166. Yet the fact that the original complaint included the Chem-Mill AD claims would not have automatically allowed the intervention, because standing must be addressed issue by issue for each individual claim. Therefore, without any plaintiff who had flown on a Chem-Mill AD flight, the Court would not have had jurisdiction over Intervenors' claims. *See Lujan*, 504 U.S. at 570 n.5; *Dall. Gay Alliance, Inc. v. Dall. Cnty. Hosp. Dist.*, 719 F. Supp. 1380, 1384 (N.D. Tex. 1989) ("[I]f none of the named plaintiffs seeking to represent a class establishes the requisite case-or-controversy, none may seek relief on behalf of himself or any other member of the purported class.").

### B. Rule 15(c) Relation Back Cannot Cure the Lack of Standing

Rule 15(c) of the Federal Rules of Civil Procedure explains the circumstances under which "[a]n amendment to a pleading relates back to the date of the original pleading." Fed. R. Civ. P. 15(c). It is undisputed that Rule 15(c) *could* allow for the addition of new plaintiffs in a

class-action lawsuit, provided that the claims of the new plaintiffs relate back to the original filing date. Yet here, Intervenors' claims cannot relate back to the original filing date because the Court does not have subject-matter jurisdiction over the original complaint. *See*, *e.g.*, *Fed. Recovery Servs., Inc. v. United States*, 72 F.3d 447, 453 (5th Cir. 1995) ("[N]either Rule 15 nor any other rule of civil procedure permit [the original named plaintiff] to cure this [subject-matter] jurisdictional defect by including or substituting [a new plaintiff]."); *see also In re Direxion Shares ETF Trust*, 279 F.R.D. 221, 236 (S.D.N.Y. 2012) ("[I]f jurisdiction is lacking at the commencement of a suit, it cannot be aided by the intervention of a plaintiff with a sufficient claim.").

Rule 15(c) cannot cure the original named Plaintiffs' lack of standing. If there is no pre-existing suit for Intervenors to join, the Court cannot offer relief. As the Fifth Circuit stated in *Summit Office Park, Inc.*: "[t]he only proper way a claim could be made was to file a new complaint with new plaintiffs, a new class, and a new cause of action." 639 F.2d at 1284. Plaintiffs seek to use Rule 15(c) as a backdoor for the breach-of-express-warranty claims relating to the alleged Chem-Mill AD violations, but they fail to adequately consider the underlying and preemptory standing problems.

### C. Tolling and the Effect of the Statutes of Limitations in Texas and Alabama on Intervenors' Claims

Having found that the Court lacks jurisdiction over the original claims, there is no need to address the issue of tolling or the Alabama statute of limitations. It is axiomatic that there can be no tolling, whether cross-jurisdictional or otherwise, of claims that are not properly before any court. Additionally, the parties' arguments regarding the statutes of limitations are irrelevant because the intervention was not proper. Nevertheless, while not necessary, the Court will

address in the alternative the Alabama and Texas statutes of limitations to resolve any potential confusion.

The Court notes that, at the earliest, Intervenors' claims accrued and the statutes of limitations began to run on June 18, 2006, because the Southwest flights that allegedly violated the Chem-Mill AD occurred between June 18, 2006, and March 23, 2007. If the discovery rule applied to these claims, then the claims accrued no later than April 11, 2008, when congressional hearings on these violations commenced. The Court will first address the *Lopez* case and the Texas statute of limitations.

### 1.  Texas Statute of Limitations for Breach of Express Warranty—*Lopez* Case

Texas law provides for a four-year limitations period for all claims that do not have an express limitations period. Tex. Civ. Prac. & Rem. Code Ann. § 16.051 (West, WestlawNext through Ch. 36 of 2013 R.S. of 83d Leg.); *see also Stine v. Stewart*, 80 S.W.3d 586, 592 (Tex. 2002) ("A party asserting a breach of contract claim must sue no later than four years after the day the claim accrues. It is well-settled law that a breach of contract claim accrues when the contract is breached."). Because breach-of-express-warranty claims do not have an express limitations period, the statute of limitations on these claims in Texas is four years.

Given this undisputed deadline, the Court concludes that the Chem-Mill AD claims and any other claims asserted by Intervenors—insofar as they would apply under the laws of Texas—are time barred. Even considering the latest possible date for the expiration of the statute of limitations, Intervenors would have needed to file their claims on or before April 11, 2012. They missed this mark by a month when they filed their Unopposed Motion to Intervene on May 21, 2012. *See* Unopposed Mot. Intervene, *Lopez v. Southwest Airlines Co.*, No. 3:08-cv-01975-O (N.D. Tex. May 21, 2012), ECF No. 154; Unopposed Mot. Intervene, *Cusick v. Southwest*

14

*Airlines Co.*, No. 3:09-cv-00137-O (N.D. Tex. May 21, 2012), ECF No. 93.  Next, the Court will address the *Cusick* case and the Alabama statute of limitations.

### 2.  Alabama Statute of Limitations for Breach of Express Warranty—*Cusick* Case

With respect to the applicable statute of limitations in the *Cusick* lawsuit, the duration is less clear.  Southwest argues that, like Texas, the applicable limitations period in Alabama is four years.  Def.'s Surresponse Mot. Dismiss 11–13, ECF No. 205.  Plaintiffs argue that Alabama case law establishes the applicable limitations period as six years.  Pls.' Surreply Mot. Dismiss 2–3, ECF No. 202.  This presupposes that a claim for breach of an express warranty exists under Alabama law, which is similarly unclear.  If the Court had found Intervenors' intervention proper, the Court would be required to make an *Erie* guess regarding whether or not Alabama recognizes a cause of action for breach of an express warranty for services and, if so, the length of the statute of limitations.

While essentially academic and immaterial to this holding, the Court will address the arguments.  The alleged breach of express warranty in this case deals with services, not goods.  Because the Uniform Commercial Code ("UCC") provisions related to breach-of-warranty claims apply only to sales of goods, the four-year statute of limitations in the UCC for breach-of-warranty claims is inapplicable to the present case.  *See* Ala. Code § 7-2-102 (WestlawNext through Act 2013-301 of 2013 R.S.) (noting that Article 2 of the Alabama UCC applies only to transactions in goods); *id.* § 7-2-725 (establishing a four-year limitations period for breach-of-warranty claims for sales of goods).  The Alabama courts have applied the six-year statute of limitations for services excluded from the UCC.  In *Turner v. Westhampton Court, L.L.C.*, a case involving the purchase of a new home, the Alabama Supreme Court stated that "[t]he statute of limitations on a breach-of-express-warranty action is six years."  903 So. 2d 82, 91 (Ala. 2004)

(citing Ala. Code § 6-2-34(9) ("The following must be commenced within six years: . . . Actions upon any simple contract or specialty not specifically enumerated in this section.")).

Southwest contends that *Turner* does not recognize a cause of action for breach of express warranty for services, arguing that "[t]he express warranty in *Turner* is thus analogous to an express warranty for a good, whereby the manufacturer warrants the tangible good—not the manufacturing process—to be free from defects." Def.'s Surresponse Mot. Dismiss 11, ECF No. 205. According to Southwest, because the service of an airline flight provides no residue of a good, like a home, it is distinguishable. *See id.* at 11–12. Additionally, Southwest argues that even if an express warranty for services is recognized in Alabama, *Turner* limited it to a transaction involving real estate, not services generally. *Id.* at 12. While the court in *Turner* did not explicitly apply such distinctions when addressing the breach-of-express-warranty claim, the Court is struck by the lack of any cases wherein Alabama courts have recognized a cause of action for breach of express warranty for *pure services* unrelated to the construction of homes. As a result, the Court's *Erie* guess is that the breach of express warranty for pure services is not a valid cause of action in Alabama. In other words, even if the Court considered the issue relevant, it would not help Plaintiffs' case.

Ultimately, the Court finds it appropriate to dismiss Plaintiffs' claims—including those of Intervenors in Florida, Nevada, California and Missouri—without prejudice, allowing Intervenors to re-file their lawsuit if they choose, subject to the respective statutes of limitations in each state. Lastly, the Court holds that Intervenors' claims have been tolled from the date of their attempted intervention up to the date of this dismissal.

## III. CONCLUSION

Based on the foregoing, it is hereby **ORDERED** that Defendant Southwest's Motion to Dismiss is **GRANTED**. Intervenors' claims are hereby **DISMISSED without prejudice**. The remaining named Plaintiffs in the *Lopez* and *Cusick* cases are also **DISMISSED without prejudice**.

**SO ORDERED** on this **10th day** of **July, 2013**.

_____
Reed O'Connor
**UNITED STATES DISTRICT JUDGE**